## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT CHARLES CLASS A, L.P. and ROBERT L. TEEL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| MERRILL LYNCH COMMODITIES, INC., BANK OF AMERICA CORPORATION, EDWARD BASES, JOHN PACILIO, and JOHN DOES NOS. 1-10, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 1:19-cv-06172

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Robert Charles Class A, L.P. and Robert L. Teel ("Plaintiffs"), individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, allege the following based upon personal knowledge, as to Plaintiffs and Plaintiffs' own acts, and upon information and belief, as to all other matters, based on the investigation conducted by and through Plaintiffs' attorneys, which includes, among other things, a review of the Non-Prosecution Agreement entered into with the Department of Justice in the Merrill Lynch Commodities, Inc. Criminal Investigation, announced on June 25, 2019, and the Order Instituting Proceedings Pursuant to Section 6(c) and (d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions in *In the Matter of: Merrill Lynch Commodities, Inc.*, CFTC Docket No. 19-07. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, particularly given the concealed nature of Defendants' (defined below) misconduct.

## SUMMARY OF ALLEGATIONS

1.      This case arises from Defendants' manipulation of prices for precious metals futures contracts through a scheme known as "spoofing."  Spoofing is a practice in which traders artificially manipulate conditions – such as supply, demand, and price – by entering buy or sell orders that they do not intend to follow-through on and then cancelling those orders.  These deceptive buy and sell orders inject materially false and misleading information into markets and are intended to cause other investors to trade on Defendants' genuine orders under conditions that are more favorable to Defendants than would otherwise have occurred.

2.      Defendants Edward Bases ("Bases") and John Pacilio ("Pacilio") were precious metal traders at Defendant Merrill Lynch Commodities, Inc. ("Merrill Lynch"), wholly owned subsidiary of Bank of America Corporation ("Bank of America" and collectively, with Merrill Lynch, Bases, and Pacilio, "Defendants") and, along with other employees of the bank, undertook the spoofing scheme.  Defendant Merrill Lynch has entered into a non-prosecution agreement with the Department of Justice ("DOJ") and a settlement agreement with the Commodities Futures Trading Commission ("CFTC") for its involvement in the unlawful conduct, described below, that was designed to, and did, artificially move the price of precious metals futures contracts in a direction that was favorable to Defendants to the detriment of other market participants. Defendants Bases and Pacilio have been indicted for their participation in the above-mentioned scheme and await trial.

3.      The illegal scheme covered gold, silver, platinum, and palladium futures contracts ("Precious Metals Futures Contracts") traded on the Commodity Exchange, Inc. ("COMEX"), a wholly owned subsidiary of CME Group Inc. ("CME Group"), a commodities marketplace made up of several exchanges.

4.     Accordingly, Plaintiffs bring this action as a class action on behalf of all persons who traded Precious Metals Futures Contracts on the COMEX from approximately January 1, 2008 through December 31, 2014, inclusive (the "Class Period"), for Defendants' violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§1, *et seq.*, and the common law.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337(a) and §22 of the CEA, 7 U.S.C. §25.  This Court also has jurisdiction over the state law claims under 28 U.S.C. §1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

6.     Venue is proper in this District, pursuant to 28 U.S.C. §§1391(b)-(d) and §22 of the CEA, 7 U.S.C. §25(c).  One or more of the Defendants resided, transacted business, were found, or had agents in this District.

7.     Defendants, directly and indirectly, made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails in connection with the unlawful acts and practices and course of business alleged herein.

## PARTIES

**A.     Plaintiffs**

8.     Plaintiff Robert Charles Class A, L.P. ("RCA") is a California limited partnership, which, at all relevant times, maintained its principal place of business in San Diego, California. RCA transacted in Precious Metals Futures Contracts on the COMEX during the Class Period at artificial prices that were caused by Defendants' unlawful conduct, resulting in injury to its business or property by reason of Defendants' violations of law, as alleged herein.

9.     Plaintiff Robert L. Teel ("Teel") is an individual who, at all relevant times, has been a resident of San Diego, California.  Teel transacted in Precious Metals Futures Contracts on the

COMEX during the Class Period at artificial prices that were caused by Defendants' unlawful conduct, resulting in injury to its business or property by reason of Defendants' violations of law, as alleged herein.

**B.    Defendants**

10.    Defendant Merrill Lynch is a Delaware corporation with its headquarters in Houston, Texas.  Defendant Merrill Lynch operates in various locations, including New York. Defendant Merrill Lynch is an indirectly wholly owned subsidiary of Bank of America.  Defendant Merrill Lynch is a global commodities trading business, including the trading of Precious Metals Futures Contracts and employed Defendants Bases and Pacilio during the Class Period.

11.    Defendant Bank of America is a Delaware corporation with its principal executive offices in North Carolina.  Defendant Bank of America is the ultimate parent of Defendant Merrill Lynch.  Defendant Bank of America was a signatory to the Merrill Lynch non-prosecution agreement and agreed to undertake certain remedial measures related to its control and compliance operations with respect to precious metals futures trading and its Merrill Lynch subsidiary.

12.    Defendant Edward Bases is a resident of Connecticut.  Defendant Bases was an employee of Defendant Merrill Lynch in its New York offices from at least June 2010 until approximately November 2015.  The DOJ indicted Defendant Bases on one count of conspiracy to commit wire fraud and commodities fraud and one count of commodities fraud – all related to the conduct at issue in this case.

13.    Defendant John Pacilio is a resident of Connecticut.  Defendant Pacilio was an employee of Defendant Merrill Lynch in its New York offices from at least October 2007 until approximately June 2011.  Defendant Pacilio was an employee of Defendant MSC in its New York office from approximately July 2011 until approximately May 2019.  The DOJ indicted Defendant

Pacilio on one count of conspiracy to commit wire fraud and commodities fraud, one count of commodities fraud, and five counts of spoofing – all related to the conduct at issue in this case

14.     Defendants John Does Nos. 1-10, inclusive, are other precious metals traders employed by Defendant Merrill Lynch that participated in, facilitated, and assisted with the manipulation and unlawful conduct alleged herein.

## SUBSTANTIVE ALLEGATIONS

### A.     Spoofing

15.     "Spoofing" is a practice in which traders attempt to give an artificial impression of market conditions by entering and quickly canceling large orders onto an exchange in an attempt to manipulate prices.  In other words, traders place numerous simultaneous orders on both the buy and sell side of a commodity, one set of which – the "Spoof Orders" – they intend to cancel, and the opposite set the "Genuine Orders."  When, for example, traders seek to lower the price of a commodity future in order to purchase it at a cheaper price, they place numerous sell orders at consistently lower prices in order to artificially lower the price of that commodity.  The traders then execute their genuine buy orders while simultaneously canceling their spoof sell orders.

### B.     Defendants Engaged in a Scheme to Manipulate the Prices of COMEX Precious Metals Futures Contracts

16.     Defendant Bases was employed at Merrill Lynch from June 2010 through November 2015.  During the relevant Class Period, Bases was employed as a precious metals trader.  Defendant Pacilio was employed at Merrill Lynch from October 2007 through June 2011.  During the relevant Class period, Pacilio was employed as a precious metal trader.

17.     From approximately 2008 through 2014, Bases and Pacilio, and other precious metal traders at Merrill Lynch, manipulated Precious Metals Futures Contracts prices through spoofing.

18.     The purpose of Defendants scheme was to "deceive other precious metals market participants by injecting materially false and misleading information into the precious metals futures market that indicated increased supply or demand, in order to induce those market participants to buy or to sell precious metals futures contracts at prices, quantities, and times that they likely would not have otherwise, in order to make money and avoid losses for" Bases and Pacilio, other precious metals traders, Merrill Lynch, and Bank of America.

19.     Bases and Pacilio would place electronic orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution – the Spoof Orders – from computers at Merrill Lynch's office in New York.  These deceptive orders were then transmitted to the COMEX, a registered entity with the U.S. Commodities Futures Trading Commission.

20.     For example, on November 16, 2010, Defendant Pacilio placed six Spoof Orders to buy approximately 250 silvers futures contracts at various prices in order to facilitate the executions of a Genuine Order placed by Pacilio.  Pacilio cancelled all six Spoof Orders in less than 2.8 seconds without receiving any fills for those orders.  Defendant Pacilio bragged about this accomplishment to other traders at Merrill Lynch over electronic chat stating "'guys the algos are really geared up in here. [I]f you spoof this it really moves.'"

21.     Similarly, on February 11, 2011, Defendant Pacilio paced three Spoof Orders to sell approximately 550 silver futures contracts at an approximate price of $29.975, with a total value of $82,431,250, in order to facilitate the Genuine Order of another employee at Merrill Lynch.  Pacilio's Spoof Orders to sell created a false impression of increased supply in the market that reduced the price at which the other employee at Merrill Lynch purchased the Genuine Order. Pacilio cancelled all three Spoof Orders in less than 1.2 seconds without receiving any fills for those orders.

22.     As another example, on June 10, 2011, Defendant Bases placed four Spoof Orders to sell 40 futures gold contracts at an approximate price of $1,535.40, with an approximate total value of $6,141,600, and five Spoof Orders to sell 50 futures gold contracts at an approximate price of $1,535.30, with an approximate total value of $7,676,500, in order to facilitate the Genuine Order of another employee at Merrill Lynch.  Bases's Spoof Orders to sell created a false impression of increased supply in the market that reduced the price at which the other employee at Merrill Lynch purchased the Genuine Order.  Bases cancelled all nine Spoof Orders in less than 2.9 seconds without receiving any fills for those orders.

23.     On February 9, 2012, Defendant Bases placed three Spoof Orders to buy 30 gold futures contracts for approximately 1,747.30, with an approximately total value of $5,241,900, in order to facilitate the Genuine Order of another employee at Merrill Lynch.  Bases's Spoof Orders to buy created a false impression of increased demand in the market that increased the price at which the other employee at Merrill Lynch sold the Genuine Order.  Bases cancelled all three Spoof Orders in less than 1.5 seconds without receiving any fills for those orders.

24.     Similarly, on January 10, 2014, Defendant Bases placed four Spoof Orders to buy 40 gold futures contracts at an approximate value of $1,245.10, with an approximate total value of $4,980,400, in order to in order to facilitate Bases's Genuine Order.  Bases's Spoof Orders to buy created a false impression of increased demand in the market that increased the price at which Bases sold the Genuine Order.  Bases cancelled all four Spoof Orders in less than 1.5 seconds without receiving any fills for those orders.

25.     Defendants placed hundreds of Genuine Orders and thousands of Spoof Orders during the Class Period.

26.     In placing these Spoof Orders, Defendants intended to deceive market participants by "injecting materially false and misleading information into the precious metals futures market that indicated increased supply or demand" for those futures contracts.  Indeed, the Spoof Orders were intended to, and in fact did, induce other market participants to trade against Defendants' Genuine Orders, that they actually wanted to execute, on the opposite side of the market from the Spoof Orders at prices, quantities, and times at which the other market participants otherwise would not have traded.

27.     These Spoof Orders were designed to, and did, artificially move the price of Precious Metals Futures Contracts in a direction that was favorable to Defendants to the detriment of other market participants.  More specifically, this sophisticated spoofing scheme benefitted Defendants and caused Plaintiffs and the Class (defined below) to suffer damages by trading at artificially manipulated prices.

28.     Because of Defendants' misconduct, Bases and Pacilio were indicted for the conduct at issue in this case and Merrill Lynch entered into a non-prosecution agreement with the DOJ and a settlement agreement with the CFTC admitting that the facts which form the basis of this complaint are "true and accurate."

## CLASS ACTION ALLEGATIONS

29.     Plaintiffs bring this class action on behalf of all persons who traded Precious Metals Futures Contracts on the COMEX from at least January 1, 2008 through December 31, 2014 (the "Class").  Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have, or had, a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds, potentially thousands, of members in the proposed Class.

31.     Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action litigation.

33.     Common questions of law and fact exist, as to all members of the Class, and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.      whether Defendants manipulated the price for Precious Metals Futures Contracts in violation of the CEA;

b.      whether Defendants' unlawful conduct damaged Plaintiffs and the Class;

c.      whether Defendants, through their unlawful conduct, unjustly enriched themselves to the detriment of Plaintiffs and members of the Class; and

d.      the time period and extent of Defendants' unlawful conduct.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small compared to the expense and burden of individual litigation, it is practically impossible for members of the Class

to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**PLAINTIFFS AND THE CLASS WERE NOT, AND COULD NOT HAVE BEEN, AWARE OF THEIR INJURY OR DEFENDANTS' UNLAWFUL CONDUCT PRIOR TO THE DOJ'S ANNOUCMENT OF A NON-PROSECUTION AGREEMENT WITH DEFENDANT MERRILL LYNCH**

35.     The unlawful conduct Defendants engaged in is, by its very nature, self-concealing. The entire point of Defendants' Spoof Orders was that other market participants would believe they were genuine, and only Defendants knew that the orders were intended to be canceled.  It was this secret behavior that enabled Defendants' scheme to artificially manipulate market prices.

36.     Not only did Defendants fail to disclose this scheme, but Plaintiffs and the Class could not have discovered it because of its inherently self-concealing nature.  Nor could any reasonable due diligence enable Plaintiffs and the Class to uncover the secret inner workings of Merrill Lynch's traders.  In turn, Plaintiffs and the Class could not have discovered their injury from Defendants' inherently self-concealing scheme.

37.     Thus, Plaintiffs and the Class did not, and could not, have knowledge or notice of Defendants' unlawful and self-concealing scheme before June 25, 2019.  On that day, the DOJ issued a press release regarding the non-prosecution agreement with Defendant Merrill Lynch.

38.     To the extent Defendants would argue that any claims asserted herein are untimely, such an argument is invalid.

**FIRST CLAIM FOR RELIEF**
**For Manipulation in Violation of the Commodity Exchange Act, 7 U.S.C. §§1, *et seq*.**
**(Against All Defendants)**

39.     Plaintiffs incorporate ¶¶1-38 by reference.

40.     Through the acts alleged herein, from at least January 1, 2008 through December 31, 2014, Defendants specifically intended to, and did, cause the manipulation of prices of Precious

Metals Futures Contracts traded on the COMEX in violation of the CEA, 7 U.S.C. §§1, *et seq*., through their use of spoof buy and sell orders and other manipulative conduct.

41.     Defendants manipulated the price of a commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, in violation of the CEA.

42.     The prices of Precious Metals Futures Contracts, and options on those futures contracts, traded on the COMEX, did not result from legitimate market forces or information during the Class Period.  To the contrary, Defendants' spoofing and other manipulative practices manipulated and artificially set those prices.

43.     Throughout the Class Period, Defendants regularly entered substantial Spoof Orders without the intention of having those orders filled and specifically intending to cancel those orders prior to execution.  By doing so, Defendants intended to inject illegitimate information about supply, demand, and price into the marketplace and to artificially move prices to benefit their own trades and positions.  Consequently, Plaintiffs and the Class suffered losses on their trades in Precious Metals Futures Contracts traded on the COMEX.  This unlawful conduct throughout the Class Period caused damages, and injury-in-fact, to Plaintiffs and Class members who purchased or sold such instruments at the artificially inflated or deflated prices.

44.     Defendants had the ability to cause, and did cause, artificial prices of Precious Metals Futures Contracts traded on the COMEX at all times and in all circumstances previously alleged herein.  Defendants, directly and/or through their employees and/or affiliates, were active in the markets for Precious Metals Futures Contracts traded on the COMEX and were aware of the effects of spoofing and other manipulative conduct on those markets.

45.     By their intentional misconduct, Defendants each violated §§6(c)-(d), 9(a), and 22(a) of the CEA, 7 U.S.C. §§9, 13b, 13(a), and 25(a), throughout the Class Period.

46.    Plaintiffs and the Class would not have been subject to damages and injury-in-fact, but for the unlawful conduct of the Defendants alleged herein.

47.    All Plaintiffs and Class members are entitled to actual damages sustained in Precious Metals Futures Contracts, traded on the COMEX, for the violations of the CEA alleged herein.

**SECOND CLAIM FOR RELIEF**
**For Employing a Manipulative and Deceptive Device in Violation of the**
**Commodity Exchange Act, 7 U.S.C. §§1, *et seq*., and Regulation 180.1(a)**
**(Against All Defendants)**

48.    Plaintiffs incorporate ¶¶1-47 by reference.

49.    The unlawful conduct alleged herein, including the use of systematically submitting and cancelling Spoof Orders and engaging in other manipulative conduct in order to artificially move prices for Precious Metals Futures Contracts, traded on the COMEX, constitutes Defendants' employment of a manipulative and deceptive device.

50.    Defendants' employment of that device was intentional and, in the alternative, reckless, conducted to generate ill-gotten trading profits at the expense of Plaintiffs and the Class.

51.    That misconduct on behalf of each Defendant violated §§6(c) and 22(a) of the CEA, 7 U.S.C. §§9 and 25(a), throughout the Class Period.

52.    Consequently, Plaintiffs and members of the Class have suffered damages and injury-in-fact due to artificial prices for Precious Metals Futures Contracts, traded on the COMEX, which they would not have suffered, but for Defendants' unlawful conduct.

53.    Plaintiffs and members of the Class are each entitled to damages for the violations of the CEA alleged herein.

### THIRD CLAIM FOR RELIEF
### Principal-Agent Liability for Violation of the Commodity Exchange Act,
### 7 U.S.C. §§1, *et seq*.
### (Against All Defendants)

54.     Plaintiffs incorporate ¶¶1-53 by reference.

55.     Each Defendant is liable under §2(a)(1) of the CEA, 7 U.S.C. §2(a)(1), for the manipulative acts of their agents, representatives, and/or other persons acting for them in the scope of their employment.

56.     As a result, Plaintiffs and members of the Class are each entitled to damages for the violation alleged herein.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Against All Defendants)

57.     Plaintiffs incorporate ¶¶1-56 by reference.

58.     Defendants received financial benefits from their unlawful acts.  Their Spoof Orders and other unlawful conduct artificially manipulated the prices of Precious Metals Futures Contracts, traded on the COMEX.  The intent and effect of this misconduct was to benefit their own trades and positions at the expense of Plaintiffs and the Class.

59.     In turn, this unlawful conduct caused Plaintiffs and other members of the Class to suffer injury, lose money, and transact at artificial prices for Precious Metals Futures Contracts, traded on the COMEX.

60.     It is unjust and inequitable for Defendants to have enriched themselves in this manner at the expense of Plaintiffs and the Class.  Equity and good conscience require Defendants to make restitution.

61.     Each Defendant should pay restitution for its own unjust enrichment to Plaintiffs and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.      Certifying this class action, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

B.      Awarding damages in favor of Plaintiffs and the Class, jointly and severally, together with prejudgment interest at the maximum rate allowable by law;

C.      Awarding Plaintiffs and the Class restitution of any and all sums of Defendants' unjust enrichment;

D.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Awarding rescission, disgorgement, or such other equitable, injunctive, or other relief deemed appropriate by the Court.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:    July 2, 2019

SCOTT+SCOTT ATTORNEYS AT LAW LLP

 /s/ Thomas L. Laughlin, IV
Thomas L. Laughlin, IV (TL-8888)
Deborah Clark-Weintraub (DW-6877)
Max R. Schwartz (MS-2517)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
dweintraub@scott-scott.com
mschwartz@scott-scott.com

Louis F. Burke
LOUIS F. BURKE P.C.
460 Park Avenue, 21st Floor

New York, NY 10022
Telephone: (212) 682-1700
Facsimile:  (212) 808-4280
lburke@lfblaw.com

*Attorneys for Plaintiffs Robert Charles*
*Class A, L.P. and Robert L. Teel*